David H. Silverstein
**AXINN, VELTROP &
HARKRIDER LLP**
114 West 47th Street
22nd Floor
New York, NY 10036
(212) 728-2200
dsilverstein@axinn.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDIN FEUSS and CHRISTOPHER NADY, <br><br> *Plaintiffs*, <br><br> v. <br><br> ENICA ENGINEERING, PLLC and REED BERINATO, <br><br> *Defendants*. | Case No.  2:20-cv-2034 |

## <u>COMPLAINT AND DEMAND FOR A JURY TRIAL</u>

Plaintiffs Sandin Feuss ("Feuss") and Christopher Nady ("Nady")

(collectively, "Plaintiffs"), by and through their undersigned attorneys, as and for

their complaint against Defendants Enica Engineering, PLLC ("Enica") and Reed

Berinato ("Berinato") (collectively, "Defendants"), allege as follows:

## THE PARTIES

1.     Sandin Feuss is a citizen of the state of New Jersey and resides at 58 Pine Street, Ramsey, New Jersey, 07446.

2.     Christopher Nady is a citizen of the state of New Jersey and resides at 17 Starrett Court, Sparta, New Jersey, 07871.

3.     Upon information and belief, Enica is a domestic professional services limited liability company ("PLLC") organized and existing under the laws of the State of New York, with a principal place of business at 330 West 38th Street, Suite 711, New York, New York, 10018.

4.     Upon information and belief, Reed Berinato is a resident of the state of New Jersey and resides at 35 Merrill Road, Clifton, New Jersey, 07012. Berinato is a licensed Professional Engineer in New Jersey (License No. 24GE04964600) and New York (License No. 091306).

5.     Berinato is, and at all relevant times was, an agent, founder, and owner of Enica.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) as this action arises under the Patent Laws, 35 U.S.C. et. seq., including 35 U.S.C. § 256.

7.     Supplemental jurisdiction over the state law claims in this action is proper under 28 U.S.C. § 1367.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Introduction

9.     Feuss and Nady (the "Inventors") invented a technology that automates the testing and performance optimization of building controlled systems (the "Invention").

10.     The Inventors and Berinato sought to go into business selling services based on the Invention.

11.     Berinato assured the Inventors that he and Enica would keep the Invention confidential.

12.     Berinato established an expectation of confidentiality on the part of himself and Enica with respect to the Invention.

13.     Berinato assured the Inventors that Berinato, as their agent, would procure a United States patent for the Inventors.

14.     Berinato assured the Inventors that Berinato, as their agent, would secure foreign patent rights to the Invention.

15.     Berinato assured the Inventors that Berinato, as their agent, would establish a new corporate entity (the "Patent Holding Company") to hold any such patents.

16.     Berinato assured the Inventors that each of Feuss, Nady, and Berinato would have one-third ownership of the Patent Holding Company.

17.     The Inventors agreed that in consideration of Berinato securing patents on the Invention, he would hold one-third of ownership of the Patent Holding Company.

18.     Berinato assured the Inventors that he would act in their best interest in seeking to form the Patent Holding Company and secure patent rights to the Invention.

19.     Berinato's assurances established a fiduciary duty that Berinato owed to the Inventors.

20.     Despite Berinato's fiduciary duties, Berinato made material misrepresentations to the Inventors that induced them to act to their detriment.

21.     For example, Berinato, both on behalf of himself and as an agent of Enica, knowingly misrepresented to Feuss that it was necessary for Feuss to assign rights in the Invention to Enica, Berinato's company, in order to secure a patent for the Invention.

22.   Berinato's material misrepresentations, both on behalf of himself and as an agent of Enica, induced Feuss to assign his rights in the Invention to Enica.

23.   Feuss's assignment of his rights in the Invention detrimentally deprived him of the ability to use, license, market, and otherwise explore business opportunities relating to the Invention.

24.   Berinato, both on behalf of himself and as an agent of Enica, knowingly failed to apprise Nady of the material fact that Nady had a right to be listed as an inventor on U.S. Patent Application No. 14/280,255 (the "Application") to patent the Invention.  A copy of the Application is attached hereto as Exhibit A.

25.   Berinato's failure to apprise Nady of that material fact, combined with Nady's reliance on Berinato to disclose such facts as Nady's fiduciary, caused Nady to be unable to secure the rights of inventorship and ownership as to any patents that were to issue from the Application.

26.   Nady's inability, induced by reliance on Berinato's omissions and intentional misrepresentations, detrimentally deprived Nady of the ability to use, license, market, and otherwise explore business opportunities relating to the Invention.

27.     The Application issued as U.S. Patent No. 10,120,373 (the "'373 Patent") on November 6, 2018.  A copy of the '373 Patent is attached hereto as Exhibit B.

28.     On information and belief, Berinato failed to secure foreign patent rights for the Invention except in Canada, where it is patented as Canadian Pat. No. 2,911,966 (the "Canadian Patent").  A copy of the Canadian Patent is attached hereto as Exhibit C.

29.     On information and belief, Berinato never established the Patent Holding Company.

30.     Berinato's fraudulent conduct, both on behalf of himself and as an agent of Enica, has resulted in Enica's full ownership of the '373 Patent and the Canadian Patent.

31.     Berinato's fraudulent conduct, both on behalf of himself and as an agent of Enica, has resulted in his wrongly being named as an inventor of the '373 Patent and the Canadian Patent, and Nady being wrongfully omitted as an inventor.

32.     Berinato and Enica have been unjustly enriched at the expense of the Inventors, at least because Berinato and Enica enjoy full ownership rights to the Invention, the '373 Patent, and the Canadian Patent as a result of Berinato's material misrepresentations and omissions to the Inventors.

33.     The unjust enrichment of Berinato and Enica at the expense of the Inventors, Berinato and Enica's material misrepresentations to the Inventors, Berinato and Enica's intentional fraud, and Berinato's breach of fiduciary and partnership duties are among the bases for this suit.

## The Invention

34.     On or around March 2011, Nady arranged for Feuss and Berinato to meet, reasoning that each of their respective talents could potentially lead to a productive working relationship.

35.     During the meeting, as Feuss, Nady, and Berinato discussed their skills and experience, Berinato provided examples of known retro-commissioning tasks.

36.     During the meeting, Feuss asserted that it could be possible to automate the processes involved in retro-commissioning.

37.     After Berinato expressed skepticism as to Feuss's assertion, Nady generated an idea for a system that could perform such automation.

38.     Feuss and Nady built upon Nady's idea by, for example, Feuss sketching out the step graphs and system response curves, and Nady proposing additional ideas and modifications as to how the system could be automated and commanded.

39.     That idea of automating the retro-commissioning process was finally reduced to practice as a collaborative effort between Feuss and Nady:  Feuss contributed the automation at the systems and scripting level, while Nady handled the development of the technology at the device level.

40.     Feuss and Nady are therefore the two rightful inventors of the Invention, which "provide[s] systems, methods, and computer program products for diagnosing an operational functionality and/or performance of one or more building controlled systems." (Ex. B at Abstract.)

41.     The Invention, as described in the '373 Patent, is a novel and incredibly valuable way to automate building control systems (including heating, ventilating, air conditioning, and central utility systems).

## The Partnership

42.     At or around the time of invention, Feuss, Nady, and Berinato repeatedly discussed reducing the Inventors' idea to practice, developing it into a commercial product, and working together to sell that product.

43.     From the outset, Feuss, Nady, and Berinato each expressed a desire to profit from the Invention, and were confident that their efforts would be the basis for a long-term, profitable business partnership.

44.     Berinato, emphasizing his business experience, proposed to the Inventors a plan for selling the Invention.

45.     Berinato persuaded the Inventors to entrust him and Enica with patenting the Invention.

46.     Berinato assured the Inventors that he would submit applications to patent the Invention.

47.     Berinato assured the Inventors that he would create the Patent Holding Company that would hold the rights to any patents that resulted, and that it would be owned by the Inventors and Berinato in three equal shares.

48.     At the time of Berinato's proposal, Berinato repeatedly used the phrase "a third, a third, a third" in assuring the Inventors that Berinato intended for all profits from the Invention to be shared equally among the three of them.

49.     The Inventors understood and agreed with Berinato that such profits would indeed be split equally and exclusively among the three of them.

50.     Feuss, Nady, and Berinato discussed the patent application process and decided to move forward with patenting the Invention.

51.     Berinato represented to the Inventors that they would be involved in and kept apprised of the progress of the patent application process.

52.     Berinato gave the Inventors no estimate of the cost to patent the Invention, however.

53.     Nonetheless, Berinato made repeated assurances to the Inventors that the three of them, through the Patent Holding Company that Berinato had promised to establish, would have equal ownership rights to any resulting patents.

### Legal Representation

54.     Without informing or receiving consent from the Inventors, Berinato unilaterally selected and hired a law firm to handle the drafting and prosecution of the Application.

55.     The Inventors had no opportunity to vote on, or even provide their opinions about, hiring the law firm and were not given any opportunity to participate in the selection of counsel in any way.

56.     In fact, Berinato did not even inform the Inventors of his decision to hire the law firm until after he had already done so.

57.     The Inventors never consented to representation by the law firm, and they were never approached, by Berinato or the law firm itself, to sign an engagement letter and become clients of the law firm.

58.     Berinato's unilateral selection and hiring of a law firm was contrary to his promise and his fiduciary duty to keep the Inventors involved in and apprised of the patent application process.

59.    The law firm that Berinato hired never met with the Inventors, and it never reached out to the Inventors to request any details about the technology during the application process.

60.    Berinato represented that the law firm would copy the Inventors on all correspondence about the Patent and any related applications.

### The Provisional Application

61.    Berinato filed U.S. Provisional Patent Application No. 61/824,131 (the "Provisional") with the United States Patent and Trademark Office on May 16, 2013.  A copy of the Provisional is attached hereto as Exhibit D.

62.    In the Provisional, Enica is listed as the applicant, and Berinato is listed as the *sole* inventor.

63.    To be complete, a provisional application must list each inventor who contributed to the conception and reduction to practice of the invention.  *See* 37 C.F.R. §§ 1.41, 1.51(c).

64.    Both Feuss and Nady contributed to the conception and reduction to practice of the Invention.

65.    Berinato knew of the Inventors' respective contributions to the Invention.

66.    Despite Berinato's awareness of their contributions, Berinato omitted naming Feuss and Nady as inventors on the Provisional.

67.     Berinato did not contribute to the conception of the Invention.

68.     Berinato did not contribute to the reduction to practice of the Invention.

69.     Berinato knew of his lack of contribution to the conception and reduction to practice of the Invention.

70.     Berinato knew he was not an inventor of the Invention.

71.     Berinato nonetheless had himself listed as the sole inventor on the Provisional.

72.     On July 1, 2013, Berinato, by and through his lawyers, filed a Request for Corrected Filing Receipt to correct a mistake in the Provisional.  A copy of the July 1, 2013 Request for Corrected Filing Receipt is attached hereto as Exhibit E.

73.     Berinato filed the Request for Corrected Filing Receipt to correct the spelling of the applicant's name from "Erica, LLC" to "Enica, LLC."  (Ex. E at 2.)

74.     At the time the Request for Corrected Filing Receipt was filed, Berinato could have also filed a similar form to correct the Provisional to add Feuss and Nady as the rightful co-inventors, and remove himself, but he declined to do so.

75.     On April 4, 2014, almost a year after filing the Provisional, Berinato, by and through his lawyers, filed an Application Data Sheet to make a change to

the Provisional.  A copy of the April 4, 2014 Application Data Sheet is attached

hereto as Exhibit F.

76.     The Provisional listed "Enica, LLC" as the assignee.  Berinato filed

the Application Data Sheet merely to change the name of the Provisional's

assignee from "Enica, LLC" to "Enica PLLC." (Ex. F at 2.)

77.     At the time the Application Data Sheet was filed, Berinato could have

also filed a similar form to correct the Provisional to add Feuss and Nady as co-

inventors, and remove himself, but again declined to do so.

**Nady's Rights**

78.     Prior to the filing of the Application, Nady asked Berinato for advice

about whether Nady could be listed as an inventor.

79.     Berinato represented to Nady that he would ask their lawyers to

provide the answer to Nady's question, but he clearly did not.

80.     Although Nady had approached Berinato seeking assurances about

*Nady's* status as an inventor, Berinato was instead concerned with his own interests

and those of Enica, and responded that the lawyers said it would be too risky to

*Enica's* interests to have Nady listed as a co-inventor on the Application.

81.     Berinato failed to inform Nady of the material fact that,

notwithstanding the interests of Berinato and Enica, Nady was lawfully entitled to

be listed as an inventor on the Application.

82.     Indeed, Berinato never even brought up with Nady the prospect of listing Nady as an inventor on the Application.

83.     And Berinato never informed Nady about the filing of the Application.  Instead, Nady learned of the Application only after it had been filed, when Feuss told Nady about Berinato having required Feuss to assign all rights to the Invention to Enica in order to be listed as an inventor.

84.     Nady has, to date, contributed at least eight thousand dollars toward legal fees for the prosecution of the '373 Patent.

85.     To date, Nady is not and has never been a named inventor on the '373 Patent.

86.     To date, Nady has derived no financial benefit from the '373 Patent.

**Assignment of Feuss's Rights**

87.     In 2014, Berinato represented to the Inventors that Berinato had spent about $50,000 of his and Enica's money toward prosecution of the Application.

88.     As Berinato continued to spend money on prosecution of the Application, he unilaterally discarded the promised "a third, a third, a third" plan to split profits equally with the Inventors, instead insisting that ownership in a patent is based on each person's respective investments of time and money in securing the patent itself.

89.     Berinato represented to Feuss that, since Berinato and Enica had invested so much money into prosecuting the Application, it would somehow be "too risky" to have Feuss's name on the '373 Patent as an inventor unless Feuss assigned his rights to Enica.

90.     As of the filing of the Application, Feuss had not been informed by Berinato, and did not otherwise know, that his legal right to ownership of a patent on his Invention cannot be based on the amount of financial investment or efforts put toward securing such a patent.

91.     On May 15, 2014, Berinato sent Feuss an email, from an "@enicaconsulting.com" email address, containing two documents:  (1) a declaration of inventorship; and (2) an agreement (the "Assignment Agreement") assigning Feuss's rights in the Invention to Enica, Berinato's company.  (*See* email from Berinato to Feuss (May 15, 2014, 11:28 ET).)  A copy of the email from Berinato to Feuss (May 15, 2014, 11:28 ET) is attached hereto as Exhibit G.  A copy of the declaration of inventorship is attached hereto as Exhibit H.  A copy of the Assignment Agreement is attached hereto as Exhibit I.

92.     In the email, Berinato identifies himself as the "Principal" of Enica Consulting," described the two documents collectively as "the patent docs," and asked Feuss to "sign, scan and email these back to me today" because "tomorrow is the filing date."  (Ex. G at 1.)

93.     Berinato led Feuss to believe he was acting in Feuss's best interests, such that Berinato was requesting only that which was required for the Application to result in an issued patent.

94.     Berinato never informed Feuss that an assignment agreement is not required to submit a United States patent application.

95.     Feuss signed and returned to Berinato the declaration of inventorship and Assignment Agreement, but was subsequently told by Berinato that there was a defect in the Assignment Agreement.

96.     Berinato requested that Feuss re-sign the Assignment Agreement.

97.     Berinato and Feuss met in person within twenty-four hours before filing so that Feuss could sign the Assignment Agreement in front of Berinato and Berinato's preferred witness, Berinato's wife.

98.     Having been convinced by Berinato that there were defects in the version of the Assignment Agreement that Feuss had previously signed, Feuss signed the Assignment Agreement for a second time on May 16, 2014, transferring his rights in the Invention to Enica.

99.     As required by law, the Assignment Agreement states that rights to the Invention were sold and assigned to Enica "for good and valuable consideration." (Ex. I at 1.)

100.   But, in fact, Feuss received nothing in exchange for assigning his rights.

101.   Berinato led Feuss to believe that not only would Berinato form the Patent Holding Company that would preserve Feuss's equal one-third ownership of the issued patent, but further that Berinato was acting as a steward of Feuss's rights.

102.   Feuss believed Berinato to be acting in Feuss's best interests, such that once a patent issued Feuss would own one-third of the Patent Holding Company.

103.   Berinato, both on behalf of himself and as an agent of Enica, led Feuss to believe that Feuss's assignment to Enica, made through the Assignment Agreement, was necessary but temporary. The assignment was not temporary.

104.   To date, Feuss has derived no financial benefit from the '373 Patent.

105.   On information and belief, Enica holds the rights to the '373 Patent to this day.

106.   On information and belief, Berinato has not formed any Patent Holding Company to hold the rights to the '373 Patent.

107.   On May 16, 2014, Enica filed the Application, which claims priority to the Provisional.

108.   Berinato is listed as the lead inventor on the Application.  (Ex. A at 63.)

109.   Feuss is listed as a co-inventor on the Application.  (*Id.*)

110.   Nady is not listed as a co-inventor on the Application.

### Events Following the Application and Assignment

111.   Berinato repeatedly tried to deceive the Inventors into believing that any patent issued from the Application would not be worth much money.  Indeed, Berinato tried to deceive the Inventors into believing that there would be little value left in the Invention by the time a patent actually issued.

112.   Berinato repeatedly tried to deceive the Inventors into believing that any value derived from the Invention would come from developing a sellable product of their own, rather than licensing such a patent to third-parties.

113.    Despite Feuss telling Berinato that Feuss believed the patent itself would be the most important asset, Berinato's own plan for monetizing the Invention instead involved developing a sellable product, evaluating market demand for the Invention, and developing and executing a marketing strategy for said product.

114.   Berinato never intended to split profits from the Invention "a third, a third, a third," despite his previous assurances to and agreements with the Inventors.

115.   Instead, Berinato told the Inventors that the equity in the Patent Holding Company would need to be shared with additional investors, such that the Inventors' respective equities in the Patent Holding Company could be less than 10 percent each..

116.   Berinato stated, in response to Feuss's concerns about legally securing Feuss's one-third ownership of any issued patent, that Feuss would have to wait several years for such a patent to issue, and further that such one-third ownership would be possible only if Feuss contributed one-third of the equity (in terms of time and money) to the Patent Holding Company.

117.   Berinato was considering Michael Carey ("Carey") as a possible equity stakeholder in the Patent Holding Company.

118.   Berinato informed Feuss that if Carey became a stakeholder then Feuss would have less than one-third ownership of any such issued patent.

119.   Berinato informed Feuss that Berinato had invested almost $50,000 to the business plan for the Patent Holding Company.

120.   Berinato informed Feuss that Berinato intended to have all persons interested in an equity stake to become members of the Patent Holding Company, which would be a limited liability company.

121.   When Feuss reminded Berinato of his promise that Feuss, Nady, and Berinato equally owned the rights to the Invention and Application, Berinato

responded that Enica in fact owned them, and would continue to own them until a plan could be devised to transfer ownership to the Patent Holding Company.

122.   When Feuss asked why Enica owned said rights, Berinato responded that it was in order to prevent stagnation of efforts and to avoid the loss of investments made by Berinato and Mark Prewett, who was Berinato's business partner at Enica.  On November 6, 2014, Berinato informed Feuss that a draft operating agreement for the new Patent Holding Company would be completed by the following week.  (Email from Berinato to Feuss (Nov. 6, 2014, 14:39 ET).)  A copy of the email from Berinato to Feuss (Nov. 6, 2014, 14:39 ET) is attached as Exhibit J.

123.   On information and belief, the Patent Holding Company has not been created, although over five years have passed.

124.   To date, the Inventors have not received any invoices for the services of the law firm that Berinato hired.

125.   When Feuss told Berinato that Feuss wanted more information about obtaining international patent rights for the Invention, Berinato responded that Feuss could talk to any lawyer about it, and also noted that the law firm Berinato had unilaterally hired charged a rate of $600 per hour.

126.   Although the '373 Patent issued on November 6, 2018, Berinato never informed the Inventors of its issuance.

127.   In early 2019, Feuss spoke with Berinato over the phone about Berinato's business.  When Feuss asked about automated functional testing (one of the subjects of the '373 Patent) during the conversation, Berinato told Feuss that it needed more development, but made no mention of the fact that the '373 Patent had already issued.

128.   On May 16, 2014, Berinato and Enica filed PCT US2014/038466 (the "PCT Application"), which claimed priority to the Provisional.  The PCT Application was published on November 20, 2014, as WIPO Publication No. WO 2014/186748.  A copy of the published PCT Application is attached hereto as Exhibit K.

129.   Enica, through Berinato, applied for a Canadian patent on the Invention on November 6, 2015.

130.   Neither Berinato nor Enica informed Feuss and Nady that an application for a Canadian patent had been filed.

131.   Enica's Canadian application resulted in the Canadian Patent, which issued on April 16, 2019.

132.   Berinato never informed Feuss and Nady of the existence of the Canadian application or the issuance of the Canadian Patent.

133.   As the owner of the PCT Application, Enica, through Berinato, had the exclusive right to file national stage applications to patent the Invention in other countries.

134.   Berinato and Enica never filed national stage applications in countries other than Canada.

135.   The deadline to file national stage applications for the PCT Application in any other country has passed.

136.   Berinato's unilateral actions, both in his individual capacity and as Enica's principal, regarding the PCT Application damaged Feuss and Nady by depriving them of business opportunities stemming from licensing and marketing their invention in other countries, causing them economic harm.

## COUNT I
## CORRECTION OF INVENTORSHIP – ADDITION OF NADY

137.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

138.   Nady conceived of ideas to use a novel system to automate manual retro-commissioning processes.

139.   Nady, using his substantial knowledge of such systems, significantly contributed to the conception of the Invention, including contributing all of the ideas as to how certain aspects of the retro-commissioning process could be performed by automated devices.

140.   Nady handled the development and tuning of the Invention at the device level, while Feuss contributed the automation at the systems and scripting level.

141.   Nady was also instrumental in developing and executing the tests that generated data sets that led to the reduction to practice of the Application.

142.   Nady made significant contributions to both the conception and the reduction to practice of the Invention.

143.   Nady's contributions to the Invention were significant in quantity when measured against the full invention.

144.   Nady contributed more to the Invention than the mere explanation of well-known concepts and/or the current state of the art.

145.   Nady is an inventor of the Invention and should be named on the '373 Patent.

146.   The '373 Patent fails to list Nady as an inventor.

147.   The improper omission of Nady as a named inventor on the '373 Patent has deprived, and continues to deprive, him of the inventorship and ownership interests to which he is duly entitled.

148.   Plaintiffs are entitled to a declaration that Nady is an inventor of the Invention of the '373 Patent.

149.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

## COUNT II
## CORRECTION OF INVENTORSHIP – REMOVAL OF BERINATO

150.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

151.   The Invention was conceived of and reduced to practice exclusively by Feuss and Nady.

152.   Berinato did not contribute to the conception of the Invention.

153.   Berinato did not contribute to the reduction to practice of the Invention.

154.   At most, Berinato merely provided Feuss and Nady with information about the current state of the art.

155.   Provision of such information does not constitute contribution to the conception or reduction to practice of the Invention.

156.   The '373 Patent improperly lists Berinato as an inventor.

157.   Plaintiffs are entitled to a declaration that Berinato is not an inventor of the Invention of the '373 Patent.

158.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

## COUNT III
## COMMON LAW FRAUD

159.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

160.   Berinato, both on behalf of himself and as an agent of Enica, made material misrepresentations of fact to Plaintiffs, despite knowing and/or believing of the falsity of those misrepresentations.

161.   Berinato, both on behalf of himself and as an agent of Enica, made such material misrepresentations with the intent that Plaintiffs rely on them.

162.   Plaintiffs reasonably relied on Berinato's misrepresentations, resulting in damage to Plaintiffs.

163.   Berinato materially misrepresented to Plaintiffs that Berinato would form a Patent Holding Company to hold the rights to the '373 Patent.

164.   Berinato made material misrepresentations knowing and/or believing of their falsity—e.g. that Berinato in fact had no intent ever to form such a Patent Holding Company.

165.   Berinato made said material misrepresentations with an intention that Plaintiffs rely on them.

166.   Plaintiffs reasonably relied on said material misrepresentations, entrusting Berinato to form a Patent Holding Company that would allow Plaintiffs to each have one-third ownership of the '373 Patent.

167.   Plaintiffs' reasonable reliance on said material misrepresentations has resulted in damage to Plaintiffs, including the loss of ownership rights to the '373 Patent, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the Invention and/or the '373 Patent.

168.   Berinato materially misrepresented to Plaintiffs that Feuss, Nady, and Berinato would have equal and exclusive ownership of the Patent Holding Company.

169.   Berinato made said material misrepresentations knowing and/or believing of their falsity—e.g., that such a Patent Holding Company could also be owned in part by other persons, such as Carey.

170.   Berinato made said material misrepresentations with an intention that Plaintiffs rely on them.

171.   Plaintiffs reasonably relied on said material misrepresentations, having entrusted Berinato to form a Patent Holding Company that would allow the Plaintiffs each to have one-third ownership of the '373 Patent.

172.    Plaintiffs' reasonable reliance on said material misrepresentations have resulted in damage to Plaintiffs, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing '373 Patent, the Canadian Patent, and the Invention.

173.    Berinato, both on behalf of himself and as an agent of Enica, intentionally misled Feuss that the Assignment Agreement was a necessary component of the Application, by providing Feuss with the Assignment Agreement in the same email as the Inventorship Declaration and instructed Feuss to sign and return both documents to Berinato the same day.

174.    Berinato, both on behalf of himself and as an agent of Enica, did not inform Feuss that the Assignment Agreement was not a necessary component of the Application.

175.    Berinato, both on behalf of himself and as an agent of Enica, represented to Feuss that the transfer of Feuss's ownership rights in the Invention to Enica was necessary.

176.    Berinato, both on behalf of himself and as an agent of Enica, represented to Feuss that the transfer of Feuss's ownership rights in the Invention to Enica would be temporary.

177.   Berinato's misrepresentations and omissions, both on behalf of himself and as an agent of Enica, regarding the Assignment Agreement constitute material misrepresentations.

178.   Berinato, both on behalf of himself and as an agent of Enica, knew or believed that said material misrepresentations were false.

179.   Berinato, both on behalf of himself and as an agent of Enica, knew or believed that Feuss would never regain his ownership rights after the Assignment Agreement was executed.

180.   Berinato, both on behalf of himself and as an agent of Enica, knew or believed that it was not necessary for Feuss to execute an Assignment Agreement before the Application could be filed.

181.   Berinato, both on behalf of himself and as an agent of Enica, intended for Feuss to rely on said material misrepresentations.

182.   On information and belief, Berinato, on behalf of himself and as an agent of Enica,  waited until the deadline to submit the Application was imminent in order to pressure Feuss to sign the Assignment Agreement.

183.   On information and belief, Berinato, on behalf of himself and as an agent of Enica, intended to create a sense of urgency in order to induce Feuss to rely on Berinato's said material misrepresentations.

184.   Feuss reasonably relied on said material misrepresentations when Feuss signed the Assignment Agreement, in light of (1) Berinato's self-generated sense of urgency for Feuss to sign the Assignment Agreement, (2) Berinato's framing of both the Assignment Agreement and Declaration of Inventorship as necessary documents to the filing of the Application, and (3) Berinato having assured Feuss that Berinato would use his best efforts to act in Plaintiffs' best interests to secure a patent on the Invention.

185.   Feuss's reasonable reliance on said material misrepresentations have resulted in damage to Feuss, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the '373 Patent, the Canadian Patent, and the Invention.

186.   Berinato and Enica failed to pursue any national stage applications on the PCT Application in any country other than Canada.

187.   The deadline for pursuing national stage applications on the PCT Application has now passed.

188.   Berinato, both on behalf of himself and as an agent of Enica, materially misrepresented to Plaintiffs that he, through Enica as assignee of the '373 Patent, would make reasonable efforts to secure international patent rights on the Invention.

29

189.   Berinato made said material misrepresentations, both on behalf of himself and as an agent of Enica, knowing or believing of their falsity—i.e., that he and Enica did not ever intend to undertake such efforts.

190.   Berinato, both on behalf of himself and as an agent of Enica, made said material misrepresentations with the intent that Plaintiffs rely on them.

191.   Plaintiffs reasonably relied on said material misrepresentations, entrusting Berinato and Enica to undertake such reasonable efforts.

192.   Plaintiffs' reasonable reliance on said material misrepresentations, made by Berinato both in his individual capacity and through Enica, have resulted in damage to Plaintiffs.

193.   Such damage includes Plaintiffs being deprived of the patent rights in United States and Canada that Berinato and Enica currently enjoy.

194.   Such damage includes Plaintiffs' permanent loss of the ability to pursue and enjoy patent rights to the Invention in each WIPO country.

195.   Such damage also includes Plaintiffs being deprived of business opportunities stemming from licensing and marketing the Invention in other countries, causing Plaintiffs economic harm.

196.   Because the Assignment Agreement would not have been executed but for Berinato's fraudulent conduct, both on behalf of himself and as an agent of Enica, Feuss is entitled to rescission of the Assignment Agreement.

197.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

198.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

199.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

200.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' fraud in an amount to be determined at trial, together with pre-judgment interest.

201.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

202.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' fraud in an amount to be determined at trial, together with pre-judgment interest.

## COUNT IV
## CONSTRUCTIVE FRAUD

203.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

204.   Berinato, both on behalf of himself and as an agent of Enica, made material misrepresentations of fact to Feuss.

205.   Berinato, both on behalf of himself and as an agent of Enica, made said material misrepresentations with the intent that Feuss rely on them.

206.   Feuss reasonably and detrimentally relied on said misrepresentations, resulting in damage to Feuss.

207.   Berinato, both on behalf of himself and as an agent of Enica, made material misrepresentations of fact to Nady.

208.   Berinato, both on behalf of himself and as an agent of Enica, made said material misrepresentations with the intent that Nady rely on them.

209.   Nady reasonably and detrimentally relied on said misrepresentations, resulting in damage to Nady.

210.   Plaintiffs' reasonable reliance on Berinato's material misrepresentations, made both in his individual capacity and as an agent of Enica,

32

have resulted in damage to Plaintiffs, including the loss of ownership rights to the
'373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of
associated business opportunities that Plaintiffs could have pursued by licensing
and marketing the '373 Patent, the Canadian Patent, and the Invention.

211.   Plaintiffs' reasonable reliance on Berinato's material
misrepresentations, made both in his individual capacity and as an agent of Enica,
have resulted in damage to Plaintiffs, including depriving Plaintiffs of the patent
rights in the United States and Canada that Berinato and Enica currently enjoy.

212.   Plaintiffs' reasonable reliance on Berinato's material
misrepresentations, made both in his individual capacity and as an agent of Enica,
have resulted in damage to Plaintiffs, including the permanent loss of the ability to
pursue and enjoy patent rights to the Invention in each WIPO country.

213.   Plaintiffs' reasonable reliance on Berinato's material
misrepresentations, made both in his individual capacity and as an agent of Enica,
have resulted in damage to Plaintiffs, including Plaintiffs being deprived of
business opportunities stemming from licensing and marketing the Invention in
other countries, causing Plaintiffs economic harm.

214.   Because the Assignment Agreement would not have been executed
but for Berinato's fraudulent conduct, both on behalf of himself and as an agent of
Enica, Feuss is entitled to rescission of the Assignment Agreement.

215.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

216.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

217.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

218.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' constructive fraud in an amount to be determined at trial, together with pre-judgment interest.

219.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

220.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' constructive fraud in an amount to be determined at trial, together with pre-judgment interest.

## COUNT V
## FRAUD IN THE INDUCEMENT

221.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

222.   Berinato, both on behalf of himself and as an agent of Enica, made material misrepresentations of fact to Feuss, despite knowing and/or believing of the falsity of those misrepresentations.

223.   Berinato, both on behalf of himself and as an agent of Enica, made said material misrepresentations with the intent that Feuss rely on them.

224.   Feuss reasonably relied on said misrepresentations, resulting in damage to Feuss.

225.   Berinato, both on behalf of himself and as an agent of Enica, made material misrepresentations of fact to Nady, despite knowing and/or believing of the falsity of those misrepresentations.

226.   Berinato, both on behalf of himself and as an agent of Enica, made said material misrepresentations with the intent that Nady rely on them.

227.   Nady reasonably relied on said material misrepresentations, resulting in damage to Nady.

228.   Berinato's material misrepresentations, both on behalf of himself and as an agent of Enica, regarding the Assignment Agreement fraudulently induced Feuss to execute the Assignment Agreement.

229.   Plaintiffs' reasonable reliance on Berinato's material misrepresentations, made both in his individual capacity and as an agent of Enica, have resulted in damage to Plaintiffs, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the '373 Patent, the Canadian Patent, and the Invention.

230.   Plaintiffs' reasonable reliance on Berinato's material misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including depriving Plaintiffs of the patent rights in United States and Canada that Berinato and Enica currently enjoy.

231.   Plaintiffs' reasonable reliance on Berinato's material misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including the permanent loss of the ability to pursue and enjoy patent rights to the Invention in each WIPO country.

232.   Plaintiffs' reasonable reliance on Berinato's material misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including Plaintiffs being deprived of business

opportunities stemming from licensing and marketing the Invention in other countries, causing Plaintiffs economic harm.

233.   Because the Assignment Agreement would not have been executed but for Berinato's and Enica's fraud in the inducement, Feuss is entitled to rescission of the Assignment Agreement.

234.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

235.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

236.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

237.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' fraud in the inducement in an amount to be determined at trial, together with pre-judgment interest.

238.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents

necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

239.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' fraud in the inducement in an amount to be determined at trial, together with pre-judgment interest.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

240.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

241.   Berinato, both on behalf of himself and as an agent of Enica, negligently made omissions and incorrect statements of fact to Feuss.

242.   Feuss justifiably relied upon said omissions and incorrect statements.

243.   Feuss's justifiable reliance on said omissions and incorrect statements resulted in damage to Feuss.

244.   Berinato, both on behalf of himself and as an agent of Enica, negligently made omissions and incorrect statements of fact to Nady.

245.   Nady justifiably relied upon said omissions and incorrect statements.

246.   Nady's justifiable reliance on said incorrect statements resulted in damage to Nady.

247.   Plaintiffs' reasonable reliance on Berinato's negligent misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the '373 Patent, the Canadian Patent, and the Invention.

248.   Plaintiffs' reasonable reliance on Berinato's negligent misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including depriving Plaintiffs of the patent rights in United States and Canada that Berinato and Enica currently enjoy.

249.   Plaintiffs' reasonable reliance on Berinato's negligent misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including the permanent loss of the ability to pursue and enjoy patent rights to the Invention in each WIPO country.

250.   Plaintiffs' reasonable reliance on Berinato's negligent misrepresentations, made both in his individual capacity and through Enica, have resulted in damage to Plaintiffs, including Plaintiffs being deprived of business opportunities stemming from licensing and marketing the Invention in other countries, causing Plaintiffs economic harm.

251.   Because the Assignment Agreement would not have been executed but for Berinato's negligent misrepresentations, made both on behalf of himself and as an agent of Enica, Feuss is entitled to rescission of the Assignment Agreement.

252.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

253.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

254.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

255.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' negligent misrepresentations in an amount to be determined at trial, together with pre-judgment interest.

256.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to

reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

257.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' negligent misrepresentations in an amount to be determined at trial, together with pre-judgment interest.

## COUNT VII
## BREACH OF PARTNERSHIP DUTIES OF LOYALTY AND CARE

258.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

259.   At or around the time of the Invention, an express partnership was formed between Berinato, Feuss, and Nady.

260.   Because of this partnership, Berinato owed Plaintiffs fiduciary duties of loyalty and care.

261.   Because of this partnership, Berinato had a duty to deal with Plaintiffs with trust, confidence, and good faith.

262.   Because of this partnership, Berinato had a duty to keep no secret advantages or benefits from Plaintiffs.

263.   Because of this partnership, Berinato had a duty to not take actions adverse to the interests of Plaintiffs.

264.   Because of this partnership, Berinato had a duty to make a full and complete disclosure of the condition of the partnership in every way essential to provide Plaintiffs with adequate knowledge regarding the '373 Patent and the Assignment.

265.   Berinato breached his duties of loyalty and care to Plaintiffs.

266.   Berinato's breach of said duties caused harm to Plaintiffs.

267.   Berinato failed to disclose material facts to Nady, acted counter to Nady's interests, and served his own and Enica's interests to Nady's significant detriment.

268.   For example, Berinato failed to disclose to Nady that Nady had the right to be listed as an inventor on the Application and the '373 Patent.

269.   In doing so, Berinato acted in his own and Enica's interests, to the detriment of both Nady and the partnership as a whole.

270.   In doing so, Berinato breached his partnership duty to deal with Nady with trust, confidence, and good faith.

271.   In doing so, Berinato breached his partnership duty to keep no secret advantages or benefits from Nady.

272.   In doing so, Berinato breached his partnership duty to not take actions on behalf of the partnership adverse to the interests of Nady.

273.   In doing so, Berinato breached his partnership duty to make a full and complete disclosure of the condition of the partnership in every way essential to provide Nady with adequate knowledge regarding rights to the Invention and the '373 Patent.

274.   Berinato's failure to disclose material facts to Nady constitute a breach of Berinato's partnership duties of loyalty and care.

275.   Berinato's breach of his partnership duties of loyalty and care caused harm to Nady.

276.   Berinato failed to disclose material facts to Feuss, acted counter to Feuss's interests, and instead served his own and Enica's interests to Feuss's significant detriment.

277.   For example, Berinato fraudulently or negligently induced Feuss to assign his rights in the '373 Patent to Enica, and failed to disclose to Feuss that the Assignment Agreement was not necessary to procuring the '373 Patent.

278.   In doing so, Berinato acted in his own and Enica's interests, to the detriment of both Feuss and the partnership as a whole.

279.   In doing so, Berinato breached his partnership duty to deal with Feuss with trust, confidence, and good faith.

280.   In doing so, Berinato breached his partnership duty to keep no secret advantages or benefits from Feuss.

281.   In doing so, Berinato breached his partnership duty to not take actions on behalf of the partnership adverse to the interests of Feuss.

282.   In doing so, Berinato breached his partnership duty to make a full and complete disclosure of the condition of the partnership in every way essential to provide Feuss with adequate knowledge regarding rights to the Invention and the '373 Patent.

283.   Berinato's failure to disclose material facts to Feuss constitute a breach of Berinato's partnership duties of loyalty and care.

284.   Berinato's breach of his partnership duties of loyalty and care caused harm to Feuss.

285.   Berinato's failure, both in his individual capacity and on behalf of Enica, to make good on his promise to Plaintiffs to pursue international patent rights for the Invention constitutes a breach of Berinato's partnership duties of loyalty and care.

286.   By not honoring his promise, Berinato breached his partnership duty to deal with Plaintiffs with trust, confidence, and good faith.

287.   By not honoring his promise, Berinato breached his partnership duty to not take actions on behalf of the partnership adverse to the interests of Feuss and Nady.

288.   By not honoring his promise, Berinato breached his partnership duty to make a full and complete disclosure of the condition of the partnership in every way essential to provide Nady with adequate knowledge regarding rights to the Invention and the '373 Patent.

289.   Berinato's breaches of his partnership duties of loyalty and care to both Plaintiffs caused harm by causing Plaintiffs to relinquish their rights to the Invention and the '373 Patent.

290.   Berinato's breaches of his partnership duties of loyalty and care to Plaintiffs caused harm by depriving Plaintiffs of the patent rights in United States and Canada that Berinato and Enica currently enjoy.

291.   Berinato's breaches of his partnership duties of loyalty and care to both Plaintiffs caused harm by permanently depriving Plaintiffs of patent rights in countries other than the United States and Canada.

292.   Berinato's breaches of his partnership duties of loyalty and care to both Plaintiffs caused harm by depriving Plaintiffs of business opportunities stemming from licensing and marketing their Invention in other countries, causing them economic harm.

293.   Berinato's breaches of his partnership duties of loyalty and care to both Plaintiffs caused harm by interfering with Plaintiffs' reasonable expectation of entering into business relationships with numerous third parties with respect to

the Invention, including but not limited to large facilities, investors, and venture capitalists that could participate in developing and commercializing the Invention.

294.   Berinato's breaches of his partnership duties of loyalty and care to both Plaintiffs caused harm by interfering with Plaintiffs' reasonable expectation of entering into licensing agreements as to the Invention with partners and users.

295.   Berinato's breaches of his partnership duties of loyalty and care to both Plaintiffs caused harm by substantially delaying the development and commercialization of the Invention, continuing to diminish and waste the value of the Invention and related patents, and preventing Plaintiffs from pursuing or enjoying the financial benefits to which they are entitled with respect to the Invention and ownership of the '373 Patent and the Canadian patent.

296.   Because the Assignment Agreement would not have been executed but for Berinato's breaches of his partnership duties of loyalty and care, Feuss is entitled to rescission of the Assignment Agreement.

297.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

298.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

299.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

300.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' breaches of partnership duties of loyalty and care in an amount to be determined at trial, together with pre-judgment interest.

301.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

302.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' breaches of partnership duties of loyalty and care in an amount to be determined at trial, together with pre-judgment interest.

## COUNT VIII
## <u>BREACH OF FIDUCIARY DUTY</u>

303.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

304.   Berinato was in a position of dominance or superiority to Plaintiffs.

305.   Plaintiffs placed trust and confidence in Berinato to act in Plaintiffs' best interest.

306.   As such, Berinato had fiduciary duties of loyalty, care, good faith, fair dealing, and candor to Plaintiffs.

307.   Berinato breached said fiduciary duties.

308.   For example, Berinato, without prior notice to or authorization from Plaintiffs, selected a law firm to prosecute the Application.

309.   Berinato knew that Plaintiffs each had an interest in ensuring that the Application was prosecuted and resulted in issuance of a patent.

310.   Berinato told Plaintiffs that he would keep them apprised as to the progress of prosecution of the Application.

311.   Berinato was the only one of Feuss, Nady, and Berinato to ever communicate with the law firm about the prosecution of the Application.

312.   By failing to inform Plaintiffs that he had selected and hired a law firm, Berinato and Enica breached at least their fiduciary duties of loyalty, care, good faith, fair dealing, and candor.

313.   Said breach caused harm to Plaintiffs.

314.   Plaintiffs were harmed by the breach in that they were deprived of the ability to have any input as to the law firm or lawyer that would prosecute the Application, or to have any meaningful input or notice as to the progress of the prosecution of the Application.

315.   Defendants failed to disclose to Nady that Nady had the right to be listed as an inventor on the Application and the '373 Patent, and thereby breached their fiduciary duties, including those of reasonable care and loyalty, to Nady.

316.   Neither Defendants nor the law firm he hired communicated with Plaintiffs about the status of the Application, even though Berinato represented to Feuss that the law required the prosecuting attorneys to keep Feuss informed.

317.   By failing to inform Plaintiffs that the Patent had issued, Defendants breached their fiduciary duties, including those of reasonable care and loyalty, to Plaintiffs.

318.   Defendants induced Feuss to assign his rights in the '373 Patent to Enica.

319.   By inducing Feuss's assignment of rights in the '373 Patent to Enica, Defendants breached their fiduciary duties, including those of reasonable care and loyalty, to Feuss.

320.   Defendants' breach of their duties of care and loyalty has caused Plaintiffs harm.

321.   Defendants' breaches of their fiduciary duties to Plaintiffs caused harm by causing Plaintiffs to relinquish their rights to the Invention and the '373 Patent.

322.   Defendants' breaches of their fiduciary duties to Plaintiffs caused harm by depriving Plaintiffs of the patent rights in United States and Canada that Berinato and Enica currently enjoy.

323.   Defendants' breaches of his fiduciary duties to Plaintiffs caused harm by permanently depriving Plaintiffs of any potential patent rights in countries other than the United States and Canada.

324.   Defendants' breaches of his fiduciary duties to Plaintiffs caused harm by depriving Plaintiffs of business opportunities stemming from licensing and marketing their Invention in other countries, causing them economic harm.

325.   Defendants' breaches of their fiduciary duties to Plaintiffs caused harm by interfering with Plaintiffs' reasonable expectation of entering into business relationships with numerous third parties with respect to the Invention, including but not limited to large facilities, investors, and venture capitalists that could participate in developing and commercializing the Invention.

326.   Defendants' breaches of their fiduciary duties to Plaintiffs caused harm by interfering with Plaintiffs' reasonable expectation of entering into licensing agreements as to the Invention with partners and users.

327.   Defendants' breaches of their fiduciary duties to Plaintiffs caused harm by substantially delaying the development and commercialization of the Invention, continuing to diminish and waste the value of the Invention and related patents, and preventing Plaintiffs from pursuing or enjoying the financial benefits to which they are entitled with respect to the Invention and ownership of the '373 Patent and the Canadian patent.

328.   Because the Assignment Agreement would not have been executed but for Defendants' breaches of their fiduciary duties, Feuss is entitled to rescission of the Assignment Agreement.

329.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

330.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

331.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373

Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

332.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' breaches of fiduciary duties in an amount to be determined at trial, together with pre-judgment interest.

333.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

334.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' breaches of his fiduciary duties in an amount to be determined at trial, together with pre-judgment interest.

### COUNT IX
### FRAUDULENT CONCEALMENT BY A FIDUCIARY

335.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

336.   Berinato, both on behalf of himself and as an agent of Enica, was in a position of dominance or superiority to Plaintiffs.

337.   Plaintiffs placed trust and confidence in Berinato to act in Plaintiffs' best interest.

338.   As such, Berinato had fiduciary duties of loyalty, care, good faith, fair dealing, and candor to Plaintiffs.

339.   Berinato, both on behalf of himself and as an agent of Enica, made material misrepresentations of fact to Plaintiffs, despite knowing and/or believing of the falsity of those misrepresentations.

340.   Berinato, both on behalf of himself and as an agent of Enica, made such material misrepresentations with the intent that Plaintiffs rely on them.

341.   Plaintiffs reasonably relied on Berinato's misrepresentations, resulting in damage to Plaintiffs.

342.   Berinato materially misrepresented to Plaintiffs that Berinato would form a Patent Holding Company to hold the rights to the '373 Patent.

343.   Berinato made material misrepresentations knowing and/or believing of their falsity—i.e., that Berinato in fact had no intent to ever form such a Patent Holding Company.

344.   Berinato made said material misrepresentations with an intention that Plaintiffs rely on them.

345.   Plaintiffs reasonably relied on said material misrepresentations, entrusting Berinato to form a Patent Holding Company that would allow Plaintiffs to each have one-third ownership of the '373 Patent.

346.   Plaintiffs' reasonable reliance on said material misrepresentations has resulted in damage to Plaintiffs, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the '373 Patent, the Canadian Patent, and the Invention.

347.   Berinato materially misrepresented to Plaintiffs that Feuss, Nady, and Berinato would have equal and exclusive ownership of the Patent Holding Company.

348.   Berinato made said material misrepresentations knowing and/or believing of their falsity—e.g., that such a Patent Holding Company could also be owned in part by other persons, such as Carey.

349.   Berinato made said material misrepresentations with an intention that Plaintiffs rely on them.

350.   Plaintiffs reasonably relied on said material misrepresentations, having entrusted Berinato to form a Patent Holding Company that would allow Plaintiffs to each have one-third ownership of the '373 Patent.

351.   Plaintiffs' reasonable reliance on said material misrepresentations have resulted in damage to Plaintiffs, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the '373 Patent, the Canadian Patent, and the Invention.

352.   Berinato, on behalf of himself and as an agent of Enica, deceptively provided Feuss with the Assignment Agreement in the same email as the Inventorship Declaration and instructed Feuss to sign and return both documents to Berinato the same day.

353.   Berinato, on behalf of himself and as an agent of Enica, did not inform Feuss that the Assignment Agreement was not a necessary component of the Application.

354.   Berinato, on behalf of himself and as an agent of Enica, represented to Feuss that the transfer of Feuss's ownership rights in the Invention to Enica was necessary and temporary.

355.   Berinato's misrepresentations and omissions, on behalf of himself and as an agent of Enica, with respect to disclosing information to Feuss about the Assignment Agreement constitute material misrepresentations.

356.   Berinato, on behalf of himself and as an agent of Enica, knew or believed that said material misrepresentations were false.

357.   Berinato, on behalf of himself and as an agent of Enica, knew or believed that Feuss would never regain his ownership rights after the Assignment Agreement was executed.

358.   Berinato, on behalf of himself and as an agent of Enica, knew or believed that it was not necessary for Feuss to execute an Assignment Agreement before the Application could be filed.

359.   Berinato, on behalf of himself and as an agent of Enica, intended for Feuss to rely on said material misrepresentations.

360.   On information and belief, Berinato, on behalf of himself and as an agent of Enica, waited until the deadline to submit the Application was imminent in order to pressure Feuss to sign the Assignment Agreement.

361.   On information and belief, Berinato, on behalf of himself and as an agent of Enica, intended to create a sense of urgency in order to induce Feuss to rely on Berinato's said material misrepresentations.

362.   Feuss reasonably relied on said material misrepresentations when Feuss signed the Assignment Agreement, in light of (1) Berinato's self-generated sense of urgency for Feuss to sign the Assignment Agreement, (2) Berinato's framing of both the Assignment Agreement and Declaration of Inventorship as necessary documents to the filing of the Application, and

(3) Berinato having assured Feuss that Berinato would use his best efforts to act in Plaintiffs' best interest to secure a patent on the Invention.

363.   Feuss's reasonable reliance on said material misrepresentations have resulted in damage to Feuss, including the loss of ownership rights to the '373 Patent, the Canadian Patent, and the Invention, as well as the ongoing loss of associated business opportunities that Plaintiffs could have pursued by licensing and marketing the '373 Patent, the Canadian Patent, and the Invention.

364.   Berinato and Enica failed to pursue any national stage applications on the PCT Application in any country other than Canada.

365.   The deadline for pursuing national stage applications on the PCT Application has now passed.

366.   Berinato materially misrepresented to Plaintiffs that he, through Enica as assignee of the '373 Patent, would make reasonable efforts to secure international patent rights on the Invention.

367.   Berinato, on behalf of himself and as an agent of Enica, made said material misrepresentations knowing or believing of their falsity—i.e., that he and Enica did not ever intend to undertake such efforts.

368.   Berinato, on behalf of himself and as an agent of Enica, made said material misrepresentations with the intent that Plaintiffs rely on them.

369.   Plaintiffs reasonably relied on said material misrepresentations, entrusting Berinato and Enica to undertake such reasonable efforts.

370.   Plaintiffs' reasonable reliance on said material misrepresentations, made by Berinato both in his individual capacity and as agent of Enica, have resulted in damage to Plaintiffs.

371.   Such damage includes Plaintiffs being deprived of the patent rights in United States and Canada that Berinato and Enica currently enjoy.

372.   Such damage includes Plaintiffs' permanent loss of the ability to pursue and enjoy patent rights to the Invention in each WIPO country.

373.   Such damage also includes Plaintiffs being deprived of business opportunities stemming from licensing and marketing the Invention in other countries, causing Plaintiffs economic harm.

374.   Because the Assignment Agreement would not have been executed but for Berinato's fraudulent concealment, Feuss is entitled to rescission of the Assignment Agreement.

375.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Nady as a co-inventor.

376.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark office, a request to correct inventorship of the '373 Patent to remove Berinato as a named inventor.

377.   Plaintiffs are entitled to an accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and are further entitled to receive a distribution of such profits based on such accounting.

378.   Plaintiffs are entitled to monetary damages relating to lost opportunity costs proximately caused by Defendants' fraudulent concealment in an amount to be determined at trial, together with pre-judgment interest.

379.   Plaintiffs are entitled to injunctive relief requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and that Feuss retains ownership rights to the '373 Patent as though the Assignment Agreement had never been executed.

380.   Defendants are jointly and severally liable to Plaintiffs for all monetary damages proximately caused by Defendants' fraudulent concealment in an amount to be determined at trial, together with pre-judgment interest.

## COUNT X
## <u>UNJUST ENRICHMENT</u>

381.   Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

382.   Defendants currently enjoy full ownership rights to the '373 Patent, the Canadian Patent, and the Invention.

383.   Said ownership rights are a benefit received from Feuss by virtue of Feuss's assignment of his rights to the Invention to Enica.

384.   Because Feuss's assignment of said rights to Enica is the result of Berinato's misrepresentations, made both on behalf of himself and as an agent of Enica, as to the necessity and duration of the assignment, it is inequitable for Defendants to continue to enjoy those full ownership rights.

385.   Said ownership rights are also a benefit received from Nady by virtue of Nady not being informed by Berinato of Nady's right to be properly listed as a co-inventor on the '373 Patent, which has deprived Nady of ownership rights in the '373 Patent, the Canadian Patent, and the Invention, as well as the reputational benefit of being a listed co-inventor.

386.   Because Nady's omission as a named co-inventor on the '373 Patent was the result of Berinato's material omissions and misrepresentations, on behalf of himself and as an agent of Enica, as to Nady's right to be listed as a named co-

inventor, it is inequitable for Defendants to continue to enjoy said full ownership rights.

387.   Defendants have received a benefit from Plaintiffs.

388.   The benefit of full ownership and control of the '373 Patent, the Canadian Patent, and the Invention flows from Defendants' misrepresentations and omissions to Plaintiffs.

389.   Defendants' retention of the benefit from Plaintiffs is inequitable.

390.   Defendants' inequitable actions have resulted in financial and reputational harm to Plaintiffs.

391.   Because the harm to Feuss, and the benefit derived by Defendants, is the result of Berinato, on behalf of himself and as an agent of Enica, having induced Feuss to execute the Assignment Agreement, Feuss is entitled to rescission of the Assignment Agreement, and is further entitled to ownership rights in the '373 Patent, the Canadian Patent, and the Invention.

392.   Because the harm to Nady, and the benefit derived by Defendants, is the result of Berinato, on behalf of himself and as an agent of Enica, having made material omissions and misrepresentations to Nady, Nady is entitled to ownership rights in the '373 Patent, the Canadian Patent, and the Invention.

393.   Plaintiffs are entitled to restitution of the full monetary amount, together with pre-judgment interest, by which Defendants have been unjustly

enriched by their full control and ownership rights of the '373 Patent, the Canadian Patent, and the Invention.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Sandin Feuss and Christopher Nady respectfully request that this Court enter judgment in their favor and against Defendants Enica Engineering, PLLC and Reed Berinato as follows:

A.   A declaration that Christopher Nady is an inventor of the Invention claimed in the '373 Patent;

B.   An injunction requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to list Christopher Nady as a co-inventor;

C.   An injunction requiring Defendants to complete, and submit to the United States Patent and Trademark Office, a request to correct inventorship of the '373 Patent to remove Reed Berinato as a named inventor;

D.   An injunction requiring Defendants to complete, and submit to the United States Patent and Trademark Office, documents necessary and sufficient to correct the assignment records of the '373 Patent to reflect that Enica is not the rightful assignee of the '373 Patent, and

that Sandin Feuss retains ownership rights to the '373 Patent as

though the Assignment Agreement had never been executed;

E.   A declaration that the Assignment Agreement is void;

F.   Rescission of the Assignment Agreement;

G.   All actual, consequential, or punitive damages proximately

attributable to Defendants' misrepresentations, actual fraud,

constructive fraud, fraudulent concealments, negligence, and/or

inducements leading to formation and execution of the Assignment

Agreement, including pre-judgment interest;

H.   All actual, consequential, or punitive damages proximately

attributable to Defendants' misrepresentations, actual fraud,

constructive fraud, fraudulent concealments, negligence, and/or

inducements leading to the omission of Christopher Nady as a named

co-inventor on the '373 Patent, including pre-judgment interest;

I.   All actual, consequential, or punitive damages proximately

attributable to Berinato's breach of his partnership duties to Plaintiffs,

including pre-judgment interest;

J.   All actual, consequential, or punitive damages proximately

attributable to Berinato's breach of his fiduciary duties to Plaintiffs,

including pre-judgment interest;

K.     All actual, consequential, or punitive damages proximately attributable to Defendants and relating to Plaintiffs' lost opportunities, both domestically and internationally, to license, use, and market '373 Patent, the Canadian Patent, and/or the Invention, including pre-judgment interest;

L.     An accounting of Defendants' profits attributable to any use, sale, offer to sell, license, or offer to license the '373 Patent, the Canadian Patent, and/or the Invention, and appropriate distribution of such profits to Plaintiffs based on such accounting;

M.     Restitution to Plaintiffs as to the full monetary amount, together with pre-judgment interest, by which Defendants have been unjustly enriched by their full control and ownership rights as to the '373 Patent, the Canadian Patent, and the Invention;

N.     All other appropriate actual damages;

O.     All other appropriate consequential damages;

P.     All other appropriate punitive damages; and

Q.     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiffs request trial by jury on all issues so triable.

Dated: February 25, 2020

OF COUNSEL:

Ricardo S. Camposanto (*pro hac vice* to be submitted)
AXINN, VELTROP & HARKRIDER LLP
950 F Street, NW
Washington, DC 20004
(202) 912-4700
rcamposanto@axinn.com

/s/David H. Silverstein
David H. Silverstein
AXINN, VELTROP &
HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
dsilverstein@axinn.com

*Attorneys for Plaintiffs Sandin Feuss and Christopher Nady*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to L. Civ. R. 11.2, I hereby certify under penalty of perjury that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any other court or of any pending arbitration or administration proceeding.

Dated: February 25, 2020                          */s/David H. Silverstein*
                                                  David H. Silverstein

## CERTIFICATION PURSUANT TO L. CIV. R. 201.1

Pursuant to Local Civil Rule 201.1(d)(3), I hereby certify that because this action seeks, in addition to monetary damages, injunctive and declaratory relief, this action is not appropriate for compulsory arbitration.

Dated: February 25, 2020                    */s/David H. Silverstein*
                                            David H. Silverstein