**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**SANDIN FEUSS and CHRISTOPHER NADY,**

      **Plaintiffs,**

      **v.**

**ENICA ENGINEERING, PLLC, and REED BERINATO,**

      **Defendants.**

Civ. No. 20-02034 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

      Sandin Feuss and Christopher Nady developed a technology for building-controlled systems (*i.e.*, heating, air conditioning, etc.). The two agreed to work with Reed Berinato and his company, Enica Engineering, PLLC (collectively "Berinato"), who would patent the technology and bring it to market. Berinato pursued the patent process, ultimately obtaining the patent, but excluded Feuss and Nady from the business and any patent rights. Feuss and Nady sued Berinato, seeking to correct the patent to list only themselves as inventors, and also asserted state-law tort and contract claims. Berinato moves to dismiss for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 18.)[1] For the following reasons, the motion is **GRANTED** to the extent it seeks dismissal of the federal-law claims for lack of standing. Because the basis for diversity or supplemental jurisdiction is lacking, I dismiss the remaining state-law claims as well.

---

[1]      Certain citations to the record are abbreviated as follows:

      DE = docket entry

      Compl. = Complaint (DE 1)

      Mot. = Berinato's Brief in Support of the Motion to Dismiss (DE 18-2)

At its heart, this is a state-law dispute which belongs in state court. Before they can assert patent rights, plaintiffs must establish that they possess a financial stake in inventorship as a matter of state contract law, or that they were deprived of such financial interests as the result of a state-law tort.

## I.   BACKGROUND

Feuss, Nady, and Berinato met in 2011 to discuss a business venture based on a new process for automating retro-commissioning. (Compl. ¶ 35.) Retro-commissioning "is a process that seeks to improve how building equipment and systems function together." Cal. Commissioning Collaborative, *California Commissioning Guide: Existing Buildings* at 2 (2006), https://www.cacx.org/resources/documents/CA_Commissioning_Guide_Existing.pdf. Nady generated an idea for such a technology, which Feuss built upon. (Compl. ¶¶ 37–38.) Berinato persuaded Feuss and Nady to entrust him and his company, Enica, with patenting the system and bringing it to market. (*Id.* ¶ 45.) Berinato assured Feuss and Nady that they would split ownership in the patent, and the profits, three ways. (*Id.* ¶¶ 47–48.)

But without Feuss and Nady's knowledge, Berinato hired a law firm that filed a provisional patent application listing Berinato as the sole inventor and Enica as the applicant. (*Id.* ¶¶ 54, 61–62.) After the filing, Berinato explained to Feuss that Feuss should assign his rights in the patent to Enica and that this assignment was part of the application process. (*Id.* ¶¶ 89, 93.) Feuss did so. (*Id.* ¶ 98.) Enica then filed an application claiming priority to the provisional application and listing Berinato as lead inventor and Feuss as co-inventor. (*Id.* ¶¶ 107–10.)

The patent issued a few years later, but Berinato never informed Feuss and Nady about the issuance. (*Id.* ¶ 126.) Likewise, Berinato filed for and received a Canadian patent but never informed Feuss and Nady. (*Id.* ¶¶ 129–32.)

Later, Feuss and Nady sued Berinato and Enica in this Court. They bring claims for (1) declaratory and injunctive relief to add Nady as a listed inventor

of the patent, (2) declaratory and injunctive relief to remove Berinato as a listed inventor, (3) common-law fraud, (4) constructive fraud, (5) fraud in the inducement, (6) negligent misrepresentation, (7) breach of partnership duties of loyalty and care, (8) breach of fiduciary duty, (9) fraudulent concealment by a fiduciary, and (10) unjust enrichment. (*Id.* ¶¶ 137–393.) Berinato moves to dismiss.

## II.   STANDARD OF REVIEW

Under Rule 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject-matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion is the vehicle for arguments that a plaintiff lacks standing. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A Rule 12(b)(1) attack can be facial where the defendant "attacks the complaint on its face without contesting its alleged facts." *Hartig Drug Co. v. Senju Pharms. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In that case, the court only considers the allegations of the complaint and documents referred to therein, taken in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Or a Rule 12(b)(1) attack can be factual where the defendant "attacks allegations underlying the assertion of jurisdiction in the complaint." *Hartig*, 836 F.3d at 268 "[W]hen reviewing a factual challenge, "a court may weigh and consider evidence outside the pleadings," and the plaintiff bears the burden of showing that jurisdiction exists. *Id.* (quoting *Aichele*, 757 F.3d at 358).

If a defendant succeeds on a Rule 12(b)(1) motion, as here, then I cannot proceed to analyze a Rule 12(b)(6) motion. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–85 (1999).

## III.   DISCUSSION

I begin (and end) with the claims arising under federal patent law, because they are the sole basis for this court's jurisdiction.[2] Berinato moves to

---

[2]     All of the other claims are state-law claims. The parties are not of completely diverse state citizenship. *See* 28 U.S.C. § 1332(a).

dismiss those inventorship claims (Counts 1 and 2) on the grounds that (1) Feuss and Nady lack standing, and (2) the Complaint fails to allege that they contributed to the invention. (Mot. at 20–22, 5–6). Standing is a jurisdictional question, so I resolve it first. *See Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 974 F.3d 408, 421 (3d Cir. 2020).

All claimants in federal court must show standing. *Id.* Specifically, a claimant must show (1) injury in fact, (2) traceability, and (3) redressability. *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 493 (3d Cir. 2020). At the pleading stage, "the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks and citation omitted). A plaintiff's standing is claim-specific. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012).

Here, the inventorship claims arise under 35 U.S.C. § 256, which "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019) (citation omitted).[3] The Federal Circuit has explicated standing to press a § 256 claim in three key cases:

First, in *Chou v. University of Chicago*, the plaintiff, a university scientist, alleged that she had been omitted as inventor from several patents. 254 F.3d 1347, 1353–54 (Fed. Cir. 2001). Her employment terms required her to assign her inventions to the university but still entitled her to royalties and licensing

---

[3]    Section 256 provides:

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

revenue. *Id.* at 1355. The court held that the assignment did not deprive her of standing because she had "concrete financial interest" in being listed on the patents (the royalties and licensing revenue), and exclusion from that entitlement was an injury sufficient for standing. *Id.*

Next, in *Larson v. Correct Craft, Inc.*, the court addressed what happens when there is an assignment of patent rights, like the one in *Chou*, but no other financial consequences tied to patent ownership, unlike the situation in *Chou*. 569 F.3d 1319, 1326–27 (Fed. Cir. 2009). *Larson* held that the plaintiff lacked standing because "he stands to reap no benefit from a preexisting licensing or royalties arrangement," so "being declared the sole inventor will not generate any other direct financial rewards as in *Chou*." *Id.* The court further explained that the plaintiff's "only path to financial reward under § 256" would be a successful state-law claim to rescind the assignment contracts. That claim, a matter of state law, was not one that a federal court could adjudicate under these circumstances. *Id.* More directly, the court concluded that "Larson's financial stake in the patents [wa]s contingent on him obtaining relief that a federal court has no jurisdiction under § 1338 to provide." *Id.* Thus, Larson could not sue for correction of inventorship in federal court without first establishing his financial stake in the patents as a matter of state law. *Id.*

Finally, in *Shukh v. Seagate Technology, LLC*, the court addressed whether reputational harm could suffice as a cognizable injury for a § 256 claim, a question left open by *Chou* and *Larson*. 803 F.3d 659, 663 (Fed. Cir. 2015). The court held that reputational injury could suffice as an injury but, like all injuries, it must be "concrete and particularized" with "[p]ecuniary consequences" flowing from designation (or not) as an inventor. *Id.* (quoting *Chou*, 254 F.3d at 1359). *Shukh* was an appeal from a grant of summary judgment, so the court reviewed the record to determine whether such consequences were present. But the court later, in a non-precedential opinion, made it clear that even on a motion to dismiss, mere allegations of reputational injury alone are not sufficient. Rather, the reputational injury "must be tied to

economic consequences, such as loss of employment prospects," alleged in a concrete and plausible way. *Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949, 954 (Fed. Cir. 2016) (per curiam).

The upshot of *Chou*, *Larson*, and *Shukh* is that a plaintiff must allege some redressable economic harm that directly flows from the incorrect listing of inventors on a patent as such. *See, e.g.*, *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18 Civ. 10758, 2019 WL 4805771, at *14–16 (S.D.N.Y. Sept. 30, 2019); *Pedersen v. Geschwind*, 141 F. Supp. 3d 405, 413–18 (D. Md. 2015). Yet Feuss and Nady have not done so. There is no royalty agreement, as in *Chou*. Presumably, Nady wants to be listed so that he may gain a right to one-third of the profits from the patent, although that is not clearly alleged. (*See* Compl. ¶ 147.) The case is unlike *Chou*, however, because being listed on the patent does not automatically entitle Nady to such profits. Rather, the entitlement to one third of the profits is alleged to flow from a separate agreement, whose validity and effect are government by state law and would need to be determined separately. As in *Larson*, Nady's harm hinges on the resolution of state-law legal questions, separate and apart from correction of the inventor listing as such.

In short, what Nady and Feuss seek under § 256 is to be deemed the only listed inventors of the patent. But it is too speculative to assume that economic benefits will derive simply from correction of the listing; the Federal Circuit requires more. *See Larson*, 569 F.3d at 1326–27; *cf. Beco Dairy Automation, Inc. v. Global Tech Sys., Inc.*, 104 F. Supp. 3d 1023, 1033 (E.D. Cal. 2015) (no standing based on theory that listed inventors would share in expenses and royalties with patent litigation because such litigation was too speculative). This claim does not establish standing in the sense that, if granted, it will confer a concrete benefit.

Additionally, the Complaint pleads that adding Nady to the listed inventors will provide a "reputational benefit." (Compl. ¶ 385) Such an allegation, without more, is insufficient to establish standing. *Kamdem-Ouaffo*,

657 F. App'x at 954; *Pedersen*, 141 F. Supp. 3d at 417–18.[4] For example, in dicta, the *Shukh* Court explained that "if [a] claimed inventor can show that being named as an inventor on a patent would affect his employment, the alleged reputational injury likely has an economic component sufficient to demonstrate Article II standing". 803 F.3d at 663. Plaintiffs here provide no plausible factual allegations to support an inference that Nady's reputation stands to benefit from correction of the listing. (*See* Compl. ¶¶385, 390.) Accordingly, the Complaint fails to sufficiently plead a redressable injury as required by *Chou*, *Larson*, and *Shukh*.

Feuss and Nady's federal claims must be dismissed for lack of standing. All of the remaining claims are state-law claims. There is no federal-question jurisdiction, because there is no federal claim. 28 U.S.C. § 1331. *A fortiori,* the court will not assert jurisdiction over the state law claims as being supplemental to a federal law claim. 28 U.S.C. § 1367.

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." § 1367(c). We might stop right there, because I have determined that I lack original jurisdiction over the only federal claim. *See Larson*, 569 F.3d at 1325–26 ("[I]f the jurisdiction-conferring patent claim is dismissed for lack of standing, the district court cannot exercise supplemental jurisdiction over surviving state-law claims because there was never an Article III case or controversy."). I will assume, however, that dismissal is discretionary rather than mandatory.[5]

"[A] court does not err if it declines to exercise supplemental jurisdiction over state claims after it dismisses a federal claim on which its jurisdiction is based in the absence of extraordinary circumstances." *Robert W. Mauthe, M.D.,*

---

[4]    Further, there is no explanation of how the removal of Berinato will have any reputational benefit.

[5]    The Federal Circuit seems to view the issue as non-discretionary. Without delving into whether the Third Circuit or Federal Circuit controls on this issue, I decline to exercise jurisdiction even if I exercise my discretion.

*P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) (citing 28 U.S.C. § 1367(c)). Indeed, where the federal claims that provided the basis for original jurisdiction are dismissed, the court should "decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted); *see Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction should be declined where the federal claims are no longer viable, absent extraordinary circumstances").

No such extraordinary circumstances or considerations of efficiency and fairness are present here. The case is in its earliest stages, at the motion to dismiss stage. Any discovery that has occurred will not be wasted if the action is refiled in a state court that possesses jurisdiction. There is no particular procedural disadvantage to having a state court hear these state-law claims. Accordingly, I would decline to exercise jurisdiction over these state-law claims on the basis of their being supplemental to a (now-dismissed) federal claim.

The only alternative basis for this Court's jurisdiction over state-law claims would be diversity subject-matter jurisdiction under 28 U.S.C. § 1332(a). Diversity jurisdiction requires that "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). That is not the case here; Feuss, Nady, and Berinato are not alleged to be diverse, and indeed they all appear to be citizens of New Jersey. (Compl. ¶¶ 1, 2, 4).

## IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss the complaint is granted. A separate order will issue.

Dated: March 26, 2021

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**