## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**SANDIN FEUSS and CHRISTOPHER
NADY,**

       **Plaintiffs,**

       **v.**

**ENICA ENGINEERING, PLLC, and
REED BERINATO,**

       **Defendants.**

Civ. No. 20-02034 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Sandin Feuss and Christopher Nady developed a technology for building-controlled systems (heating, air conditioning, etc.). The two agreed to work with Reed Berinato and his company, Enica Engineering, PLLC ("Enica") (referred to together as "Berinato"), who would patent the technology and bring it to market. Berinato pursued the patent process, ultimately obtaining the patent, but excluded Feuss and Nady from the business and any patent rights. Feuss and Nady sued Berinato, seeking to correct the patent to list only themselves as inventors, and also asserted various state law claims. I previously granted Berinato's motion to dismiss the federal claim pursuant to Fed. R. Civ. P. 12(b)(1) because Feuss and Nady had not adequately alleged that they had standing, and I dismissed the state law claims for lack of supplemental jurisdiction. (DE 28.)[1]

---

[1]     Certain citations to the record are abbreviated as follows:

     DE = docket entry

     Compl. = Complaint (DE 38)

     Mot. = Berinato's Brief in Support of the Motion to Dismiss (DE 43)

     Op. Mot. = Plaintiffs' Brief in Opposition to Berinato's Motion to Dismiss (DE 44)

Feuss and Nady then filed their First Amended Complaint (DE 38), which Berinato now moves to dismiss for lack of standing and failure to state a claim (DE 43). For the following reasons, the motion to dismiss the First Amended Complaint is **DENIED** to the extent it seeks dismissal of the federal claims for lack of standing. It is **GRANTED** as to Count VIII. It is **DENIED** as to all other claims.

## I.   BACKGROUND

For purposes of this motion to dismiss, the allegations of the complaint are assumed to be true. Feuss, Nady, and Berinato met in 2011 to discuss a business venture based on a new process for automating retro-commissioning.[2] (Compl. ¶¶ 36–39.) Feuss and Nady developed a technology that automates the testing and performance optimization of building-controlled systems. (*Id.* ¶ 9.) Berinato persuaded Feuss and Nady to entrust him and his company, Enica, with patenting the system and bringing it to market. (*Id.* ¶ 50.) Berinato proposed the creation of a Patent Holding Company that would hold the rights to any patents that resulted and assured Feuss and Nady that they would split ownership in the patent, and the profits, three ways. (*Id.* ¶¶ 53–56.)

But without the knowledge of Feuss and Nady, Berinato hired a law firm that filed a provisional patent application listing Berinato as the sole inventor and Enica as the applicant. (*Id.* ¶¶ 60, 69–70.) After the filing, Berinato explained to Feuss that Feuss should assign his rights in the patent to Enica as a necessary part of the application process. (*Id.* ¶¶ 119, 125–134.) Feuss did so. (*Id.* ¶ 130, 133.) Nady, however, never signed or entered into an agreement assigning his rights in the patent to Berinato or any other third party. (*Id.* ¶¶ 220–21.)

Enica filed an application claiming priority to the provisional application. This time, Berinato was still listed as lead inventor, but Feuss was added as co-

---

[2]     The term refers to restoring or improving the efficient performance of a building's systems.

inventor. (*Id.* ¶¶ 142–44.) Nady, however, was not listed as a co-inventor on the application. (*Id.* ¶ 145.)

The patent issued a few years later, but Berinato did not inform Feuss and Nady about the issuance. (*Id.* ¶ 192.) Likewise, Berinato filed for and received a Canadian patent but did not inform Feuss and Nady.[3] (*Id.* ¶¶ 232–35.) Berinato never established the Patent Holding Company. (*Id.* ¶¶ 29-30.)

## II.   PROCEDURAL HISTORY

Feuss and Nady filed their initial complaint on February 25, 2020, alleging federal and state-law claims. (DE 1.) I dismissed the initial complaint, finding that Feuss and Nady had failed to allege standing. (DE 28.) The federal claims having been dismissed, I declined to assert supplemental jurisdiction over the state-law claims.

Feuss and Nady moved for leave to amend their initial complaint, which Berinato opposed. (DE 30, 33.) On November 23, 2021, Judge Clark issued a letter opinion granting the motion to amend, noting that "Nady does appear to have adequately amended the complaint to clarify the ambiguities identified in Judge McNulty's opinion." (DE 37.) Having obtained Judge Clark's authorization, Feuss and Nady filed their First Amended Complaint on November 29, 2021.

The First Amended Complaint seeks declaratory and injunctive relief to add Nady as a listed inventor of the patent (Count I) and to remove Berinato as a listed inventor (Count II). Feuss and Nady further allege state-law claims of common-law fraud (Count III); constructive fraud (Count IV); fraud in the inducement (Count V); negligent misrepresentation (Count VI); breach of partnership duties of loyalty and care (Count VII); breach of fiduciary duty (Count VIII); fraudulent concealment by a fiduciary (Count IX); and unjust enrichment (Count X). (DE 38, *Id.* ¶¶ 240–570.)

---

[3]      Plaintiffs do not seek to correct inventorship as to that Canadian patent, but only as to the United States patent. (Compl. ¶¶ 276, 285.)

On December 27, 2021, Berinato filed the motion to dismiss the First Amended Complaint, arguing that Counts I and II, like their predecessors in the original complaint, should be dismissed for lack of standing. (DE 43.) As to the remaining, state-law Counts, Berinato asserts that all should be dismissed for lack of subject matter jurisdiction. In the alternative, he moves to dismiss all Counts for failure to state a claim. Feuss and Nady filed their opposition on January 24, 2022 (DE 44), to which Berinato replied on January 31, 2022 (DE 45.) The motion is fully briefed and ripe for decision.

## III.   STANDARD OF REVIEW

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject-matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion is the vehicle for arguments that a plaintiff lacks standing. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A Rule 12(b)(1) attack can be facial where the defendant "attacks the complaint on its face without contesting its alleged facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016). In that case, the court only considers the allegations of the complaint and documents referred to therein, taken in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Or a Rule 12(b)(1) attack can be factual where the defendant "attacks allegations underlying the assertion of jurisdiction in the complaint." *Hartig*, 836 F.3d at 268. When reviewing a factual challenge, "a court may weigh and consider evidence outside the pleadings," and the plaintiff bears the burden of showing that jurisdiction exists. *Id.* (quoting *Aichele*, 757 F.3d at 358).

### B. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a

motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678. Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### C. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal

quotation and citation omitted). In general, "[t]o satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (internal citations omitted) (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99 (3d Cir. 1983)).

## IV.   DISCUSSION

### A. Standing

For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019). Specifically, a plaintiff must show (1) injury in fact, (2) traceability, and (3) redressability. *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 493 (3d Cir. 2020). At the pleading stage, "the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation marks and citation omitted). The inventorship claims arise under 35 U.S.C. § 256, which "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019) (citation omitted).[4]

---

[4] Section 256 provides as follows:

"It is a bedrock tenet of patent law that 'an invention presumptively belongs to its creator.'" *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (quoting *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 406 (Fed. Cir. 1996)). In other words, it is a presumption that "the inventor owns his invention." *Id.*; *see also Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 786 (2011). In *James v. J2 Cloud Servs., LLC*, the plaintiff asserted that he had standing to bring a claim for correction of inventorship under § 256 because he was the inventor, his status as inventor entitled him to ownership, and § 256 provided him with a cause of action to establish inventorship. 887 F.3d 1368, 1372 (Fed. Cir. 2018). The Federal Circuit recognized that the plaintiff's putative ownership interest was sufficient to give him Article III standing. *Id.*

Plaintiffs here assert that Nady has standing by way of (1) an ownership interest; (2) a financial interest; and (3) a reputational interest in being named as an inventor of the patent. (Op. Mot. pp. 5–10.) Among other reasons, Berinato asserts that Feuss and Nady do not have standing because they assigned away their ownership interests in the patent—Feuss assigned his rights to Enica via a written agreement and Nady orally agreed at the outset to assign his rights to a (never-formed) Patent Holding Company. (Mot. pp. 7, 9–10.) Because Feuss and Nady have assigned away their rights to the patent, the argument runs, they cannot assert standing based on an ownership interest. *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326–27 (Fed. Cir. 2009); *Chou v. University of Chicago*, 254 F.3d 1347, 1358 (Fed. Cir. 2001).

---

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

I begin with Nady. Nady has alleged an ownership interest as inventor of the patented device. The complaint alleges that Nady, unlike Feuss, "never considered, signed, or entered into any agreement assigning his rights" in the patent to Berinato, Enica, or any third party. (Compl. ¶ 264.) Furthermore, the parties' oral agreement to place the patent in a Patent Holding Company would not constitute a valid assignment of an ownership interest. *See Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1380 (Fed. Cir. 2009) ("[I]f assignment is the method of transfer of patent ownership, it must be done in writing, pursuant to [35 U.S.C.] § 261."). The transfer to the Patent Holding Company never occurred. Indeed, no such Patent Holding Company has ever existed; in short, there is no assignee. (*Id.* ¶¶ 29–30); *cf. Chou*, 254 F.3d at 1356–57 (finding that the plaintiff had an obligation to assign future inventions to an existing University). Therefore, I conclude that Nady has standing to bring correction of inventorship claims under 35 U.S.C. § 256. I exercise supplemental jurisdiction over Nady's state-law claims because they arise from the same case or controversy as the federal claims. *See* 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005).

I now turn to Feuss. Feuss is named as a co-inventor of the patent and has assigned his rights in the patent to Enica; therefore, Feuss cannot assert standing based on the 35 U.S.C. § 256 claims unless and until he negates that assignment—for example, by prevailing on his state-law claims that his consent was obtained by means of fraud or a breach of fiduciary duty. *See Larson*, 569 F.3d at 1326–27. Feuss's claims, though legally distinct from those of Nady, arise from the same set of facts as Nady's federal and state-law claims. Indeed, they are so intertwined that they constitute a single controversy and should be heard together. Therefore, I may exercise supplemental jurisdiction over Feuss's state-law claims. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**B. Correction of Inventorship (Counts I and II)**

Having found that I have subject-matter jurisdiction, I now address Defendant's motion to dismiss Counts I and II for failure to state a claim, under Rule 12(b)(6).

A person may be listed as an inventor if he or she "contribute[d] to the conception of the claimed invention." *Blue Gentian v. Tristar Prod., Inc.*, 434 F. Supp. 3d 203, 217 (D.N.J. 2020) (citing *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997)). For joint inventorship, there is no "lower limit on the quantum or quality of the inventive contribution required for a person to qualify as a joint inventor." *Id.* A joint inventor is neither required to contribute in the same way or amount as a named inventor, nor to "make a claim to every claim of a patent." *Id.* (citation and quotation marks omitted) (quoting 35 U.S.C. § 116). "A contribution to one claim is enough." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). In contrast, one who simply provides "well-known principles or explains the state of the art" does not, without more, qualify as a joint inventor. *Id.*

Plaintiffs seek to correct the patent to add Nady as an inventor[5] and to remove Reed Berinato as an inventor. Berinato asserts that the claims should be dismissed because the amended complaint fails to identify Nady's specific contributions to the invention "by pleading which of the specific patent claims and claim elements of the [patent] Nady allegedly co-invented." (Mot. pp. 13–14.) According to Berinato, "[a]t best, Plaintiffs allege that Nady contributed to the reduction to practice, but fail to include any specific allegations as to any purported idea he *conceived*, which is legally required to be an inventor." (*Id.* at 14.) Berinato does not make any arguments as to why the claim to remove Reed Berinato as an inventor should be dismissed, other than stating that the claim is not "sufficiently pleaded." (*See id.* at 12–14.)

Neither of the cases cited by Berinato support his assertion that the plaintiff must, at the complaint stage, specify which of the patent claims and

---

[5]   Feuss, remember, is already listed as co-inventor. *See* pp. 2–3, supra.

claim elements Nady co-invented. *See Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1378 (Fed. Cir. 2004); *Eastman v. Apple, Inc.*, No. 18-cv-05929, 2019 WL 1559015, at *4 (N.D. Cal. Apr. 10, 2019). Indeed, *Eastman* tends to point the other way; it states that plaintiffs are not required to "plead their inventorship theories in sufficient detail to carry their ultimate evidentiary burden at the motion to dismiss stage," 2019 WL 1559015, at *3. The passages cited by Berinato require only that a plaintiff allege a contribution to the *claimed invention*, which is defined in 35 U.S.C. 100(j) as "the subject matter defined by a claim in a patent or an application for a patent."

Under that broader definition, the complaint adequately alleges that Nady contributed to the subject matter of the patent at issue. Plaintiffs allege that Nady (1) "generated a novel idea for a system that could perform . . . automation" of retro-commissioning processes (Compl. ¶ 38–39); (2) built upon that novel idea with Feuss by, for example, "proposing additional ideas and modifications as to how the system could be automated and commanded" (*id.* ¶ 40); and (3) "significantly contributed to the conception of the [i]nvention, including contributing all of the ideas as to how certain aspects of the retro-commissioning process could be performed by automated devices" (*id.* ¶ 242).

Feuss and Nady have also stated a claim in Count II for removal of Reed Berinato as a named inventor. The complaint states that he "did not contribute to the conception of the [i]nvention," or "contribute to the reduction to practice of the [i]nvention." (*Id.* ¶¶ 77–78, 278–80). Feuss and Nady describe Mr. Berinato's contributions as being limited to obtaining the patent based on already-established technology (*id.* ¶¶ 9–14); providing "examples of known retro-commissioning tasks" (*id.* ¶ 37); and proposing a plan for selling the invention (*id.* ¶ 49). If assumed to be true, as they must be, these allegations could support a claim.

Plaintiffs must ultimately provide clear and convincing evidence to overcome the presumption that "the named inventors are the true and only inventors." *See Ethicon, Inc.*, 135 F.3d at 1460; *Hess v. Advanced*

*Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997). At this, the pleading stage, however, they have adequately alleged otherwise.

Therefore, the motion to dismiss Counts I and II for failure to state a claim is denied.

### C. Fraud and Negligent Misrepresentation (Counts III, IV, V & VI)

Defendants also move to dismiss the claims of fraud and negligent misrepresentation for failure to state a claim. To state a claim of common-law fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Constructive fraud is similar, but does not require "scienter, or 'knowledge of the falsity and an intention to obtain an undue advantage therefrom,'" *Read v. Profeta*, 397 F. Supp. 3d 597, 636 (D.N.J. 2019); *see Ferry v. Black Diamond Video, Inc.*, No. 15-cv-7723, 2016 WL 3381237, at *8 (D.N.J. June 14, 2016) ("[T]he terms "constructive fraud" and "equitable fraud" appear to be interchangeable."). Fraud in the inducement also "does not differ materially from common law fraud." *OWAL, Inc. v. Caregility Corp.*, No. 21-cv-13407, 2022 WL 890182, at *11 (D.N.J. Mar. 25, 2022) (quoting *Square Two, LLC v. JJJ Solutions, LLC*, No. A-3065-18, 2021 WL 851091, at *7 (N.J. Super. Ct. App. Div. Mar. 8, 2021)). To establish a claim for negligent misrepresentation, a plaintiff must show that "(1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance." *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 409 (D.N.J. 2016). The heightened pleading requirements of Rule 9(b) apply to these fraud-based claims. *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011).

Berinato argues that the complaint's fraud-based claims are not "pleaded with the requisite particularity" under Rule 9(b) and that the complaint fails to

allege any fraudulent intent. (Mot. pp. 16–17.) Berinato further argues that the negligent misrepresentation claim is "excessively generic" and the damages are speculative. (Mot. p. 21.)

The complaint alleges that Berinato "intentionally misled Feuss that the Assignment Agreement was a necessary component of the Application." (Compl. ¶¶ 303–04.) Plaintiffs state that on May 14, 2014, Berinato told Feuss that his attorney was preparing the necessary documents for filing the patent application. (*Id.* ¶ 121.) On May 15, 2014, Berinato sent Feuss the "patent docs" via email, which included the patent application and the assignment agreement. Berinato asked Feuss to "sign, scan and email [the documents] back to [him] today" and stated that the patent filing date was the next day. (*Id.* ¶¶ 125–26; DE 1-7). On May 16, 2014, Berinato asked Feuss to re-sign the assignment agreement. (*Id.* ¶¶ 130–34.) That same day, Enica filed the patent application. (*Id.* ¶ 142.) Plaintiffs allege that the assignment agreement was not necessary for the patent application, and that Berinato intentionally created a sense of urgency to induce Feuss to sign the documents. (*Id.* ¶¶ 313–14.) As a result, Feuss lost his ownership rights in the patent. (*Id.* ¶ 315.)

In addition, the complaint alleges that, around March 2011, Berinato assured Feuss and Nady that he would "create the Patent Holding Company that would hold the rights to any patents that resulted, and that it would be owned by [Feuss, Nady,] and Berinato in three equal shares." (Compl. ¶¶ 36, 53–55.) Berinato repeatedly used the phrase "a third, a third, a third." (*Id.* ¶ 54.) All parties agreed that the profits would be split equally among the three of them. (*Id.* ¶ 55.) The complaint goes on to state that Berinato never formed the Patent Holding Company and that, on December 11, 2014, he sent Feuss and Nady a draft letter in which he proposed an arrangement inconsistent with a three-way split. (*Id.* ¶¶ 29–30, 153–54, 179–82; DE 38-1 [Filed Under Seal].) The complaint also asserts that Berinato represented that he "would make reasonable efforts to secure international patent rights on the [i]nvention," but actually obtained a patent only in Canada. (Compl. ¶¶ 28, 318.) Due to

Berinato's sole ownership of the patent, he had the exclusive right to file foreign patent applications, but he failed to file an application in any country other than Canada before the deadline to do so expired. (*Id.* ¶¶ 236–238.)

These facts, I find, suffice to allege not merely a breach of promise, but Berinato's contemporaneous intent to never honor the obligations he purported to undertake. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002) ("with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud.") (quoting *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-cv-6455, 2000 WL 49361, at *7 (D.N.J. 2000), *aff'd in part, rev'd in part on other grounds*, 253 F.3d 159 (3d Cir. 2001)).

The complaint is not a model of specificity, and it asserts facts that occurred years ago. Nevertheless, as now amended, it satisfies Rule 9(b)'s requirements by stating the "precise misconduct" with which Berinato is charged. As described above, the complaint states when the alleged misrepresentations occurred, what those misrepresentations consisted of, or otherwise injects enough precision into the fraud allegations to place Berinato on notice of the conduct at issue. *See Frederico*, 507 F.3d at 200.

Therefore, the motion to dismiss the fraud-based, state-law Counts III, IV, V, or VI for failure to state a claim is denied.

### D. Breach of Partnership and Fiduciary Duties (Counts VII & VIII)

The remaining claims, which are not fraud-based, need only comply with the pleading requirements of Rule 8, not the heightened standards of Rule 9(b).

"Claims for breach of fiduciary duty require: (1) the existence of a fiduciary duty or relationship between the parties; (2) breach of that duty; and (3) resulting damages." *Starland v. Fusari*, No. 10-cv-4930, 2015 WL 5771617, at *6 (D.N.J. Sept. 3, 2015). "Traditional fiduciary relationships include those between trustee and beneficiary, guardian and ward, agent and principal, attorney and client, corporate director and shareholder, and the members of a

partnership." *Read*, 397 F. Supp. 3d at 633. "Fiduciary duties are not imposed in ordinary business transactions." *Id.*

New Jersey law defines a partnership as "an association of two or more persons to carry on as co-owners [of] a business for profit." N.J. Stat. Ann. § 42:1A-2. New Jersey courts look to the following factors to determine the existence of a partnership: (1) intent of the parties; (2) right to share in profits; (3) obligation to share in losses; (4) ownership and control of the partnership property and business; (5) community of power in administration and reservation; (6) language of the partnership agreement; (7) conduct of the parties towards third parties; and (8) rights of the parties on dissolution. *Aequus Techs., LLC v. gh, LLC*, No. 03-cv-5139, 2009 WL 2526697, at *4 (D.N.J. Aug. 17, 2009) (citing *Fenwick v. Unemployment Compensation Comm'n*, 44 A.2d 172, 174–75 (N.J. 1945)). This is not a checklist, but "State and federal decisions indicate that if a number of factors are not met by the facts of the case, there is no partnership agreement." *Id.*

Berinato argues that Feuss and Nady cannot establish a partnership between Feuss, Nady, and Berinato because they can only satisfy the first two factors. (Mot. pp. 21, 24–25.) The complaint contains factual allegations which do not conclusively establish, but could support a finding that a partnership existed among Feuss, Nady, and Berinato. (Compl. ¶¶ 16, 48, 53–55). The complaint alleges that the parties agreed to transfer their patent rights to a Patent Holding Company. (*Id.* ¶ 53.) Each party would own one-third of the Patent Holding Company and would share profits equally. (*Id.* ¶¶ 16, 54–55.) Losses were apparently not discussed. The complaint also states that Berinato described his relationship with Feuss and Nady as a partnership in conversations and in his draft letter of December 11, 2014. (*Id.* ¶ 48; DE 38-1 [Filed Under Seal].) The facts do suggest the essence of a partnership: "an association of two or more persons to carry on as co-owners [of] a business for profit." At the pleading stage, that is enough; further weighing of factors must await the development of a factual record. The complaint further alleges that

14

Berinato breached his duties of loyalty and care and that, as a result, Feuss and Nady suffered harm by losing their rightful ownership interests in the patent and the related benefits. (Compl. ¶¶ 439–446.)

The complaint, however, does not support the existence of any other fiduciary relationship. Feuss and Nady assert a separate fiduciary relationship was formed based on Berinato's "position of dominance or superiority to Plaintiffs." (Compl. ¶ 459–60, 497.) "[T]he dominant theme of the case law . . . is that fiduciary relationships arise where one party has the power and opportunity to take advantage of the other, because of that other's susceptibility or vulnerability." *Read*, 397 F. Supp. 3d at 633 (quoting *Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.*, 696 F. Supp. 57, 75 (D. Del. 1988), *aff'd*, 988 F.2d 386 (3d Cir. 1993)). Feuss and Nady do not allege any susceptibility or vulnerability that Berinato had the power or opportunity to take advantage of by way of his position.

Finding that the allegations, if true, could support a claim that Berinato breached his partnership duties of loyalty and care, the motion to dismiss Count VII is denied. However, because the complaint does not allege facts to support the existence of any other fiduciary relationship, Count VIII is dismissed.

### E. Fraudulent Concealment by a Fiduciary (Count IX)

Fraudulent concealment by a fiduciary arises when a defendant who was in a fiduciary capacity is "silent in the face of an obligation to disclose certain facts, instead of an affirmative misrepresentation." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435, n. 14 (D.N.J. 1998); *see also Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009). The Restatement (Second) of Torts § 551 requires that one party to a business transaction must disclose "matters known to him that the other is entitled to know because of a fiduciary [relationship] . . . between them" or disclosure of "facts basic to the transaction, if he knows that the other [party] is about to enter into it under a mistake as to them," and the other party "would reasonably expect a disclosure of those

15

facts." *Miller v. Butler*, No. 12-cv-1004, 2014 WL 1716184, at *4 (D.N.J. Apr. 30, 2014).

Feuss and Nady base their fraudulent concealment claim on conduct related to their other fraud-based claims discussed above—*i.e.*, Berinato failed to disclose to Feuss and Nady that: (1) he had no present intention to form the Patent Holding Company or to split the company's profits equally; (2) he had no present intention to obtain international patent rights in countries other than Canada; and (3) Feuss, contrary to Berinato's representations, was not required to assign his rights in the patent to Enica as part of the patent application process. (Compl. ¶¶ 503–04, 516–17, 527–30.) Given that the complaint contains allegations sufficient to place Berinato on notice of the alleged fraudulent conduct at issue and that a fiduciary partnership relationship existed between Feuss, Nady, and Berinato, the motion to dismiss Count IX is denied.

### F. Unjust Enrichment (Count X)

Under New Jersey common law, a claim for unjust enrichment requires allegations that (1) "the opposing party received a benefit;" (2) "retention of that benefit without payment would be unjust;" and (3) the plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, (N.J. 2016) (internal quotations omitted). In other words, the plaintiff must demonstrate that the "defendants received a benefit and that retention of that benefit without paying would be unjust." *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015) (quoting *Goldsmith v. Camden Cty. Surrogate's Office*, 975 A.2d 459, 462 (App. Div. 2009)).

Berinato asserts that this claim should be dismissed because Feuss and Nady allege a contractual relationship between the parties and therefore cannot recover under a theory of unjust enrichment. (Mot. pp. 26–27.) However, "Federal Rule of Civil Procedure 8(d) permits alternative and inconsistent

pleading of claims. Accordingly, federal courts applying New Jersey law have generally declined to dismiss quasi-contract claims that are pleaded along with express contract claims." *Gap Props., LLC v. Cairo*, No. 19-cv-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020).

The complaint states a claim for unjust enrichment. Plaintiffs allege that Berinato received the benefit of "full ownership rights" to the patent and the invention as a result of "Feuss's assignment of his rights to the [i]nvention to Enica" and "Nady not being informed by Berinato of Nady's right to be properly listed as a co-inventor" on the patent. (Compl. ¶¶ 550–51, 553.) Although Feuss's assignment agreement states that the rights to the Invention were sold and assigned to Enica "for good and valuable consideration," Feuss has "received nothing in exchange for assigning his rights." (*Id.* ¶¶ 134–35.) Similarly, Nady "has derived no financial benefit" from the patent. (*Id.* ¶ 116.) The parties expected to receive one-third of the profits from the patent; however, Berinato has retained exclusive ownership of the patent, never created the Patent Holding Company, and Feuss and Nady have received no profits or other benefit.

Therefore, the motion to dismiss Count X is denied.

## V. CONCLUSION

For the reasons set forth above, the motion to dismiss the First Amended Complaint is granted in part and denied in part. A separate order will issue

Dated: September 22, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**